UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

WILLIAM G. WIZINSKY,

   Plaintiff,

vs.

LEELANAU COUNTY, PAUL HUNTER,
STEVE PATMORE, DOUG SCRIPPS,
DENISE DUNN, DEBORAH VANPELT,
GARY FREDERICKSON, GAYLEN
LEIGHTON, TODD HOOGLAND,
DICK KOENIG, PETER WOLCOTT,
NORM GOLM and BRIGID HART

   Defendants.

Case No. 19-cv-00894
Hon. Janet T. Neff
Magistrate Judge Sally J. Berens

** ORAL ARGUMENT REQUESTED**

_____/

| | |
|---|---|
| WILLIAM G. WIZINSKY<br>Plaintiff in Pro Se<br>250 Pleasant Cove Drive<br>Novi, MI 48377<br>(248) 219-1220<br>wwizinsky@aol.com | ROSATI SCHULTZ JOPPICH<br>& AMTSBUECHLER PC<br>By: MATTHEW J. ZALEWSKI (P72207)<br>Attorneys for Leelanau County and Paul<br>Hunter, Only<br>27555 Executive Drive, Suite 250<br>Farmington Hills, MI 48331-3550<br>(248) 489-4100/FAX (248) 489-1726<br>mzalewski@rsjalaw.com |

_____/

**DEFENDANTS LEELANAU COUNTY AND PAUL HUNTER'S
MOTION FOR SANCTIONS**

**\*\*\*ORAL ARGUMENT REQUESTED\*\*\***

Defendants, LEELANAU COUNTY and PAUL HUNTER, through their attorneys, ROSATI, SCHULTZ, JOPPICH & AMTSBUECHLER, PC, and pursuant to Fed. R. Civ. P. 11, moves this Court to enter an Order awarding sanctions to Defendants, and to grant any other relief deemed appropriate.

In support of this motion, the County relies on the reasons stated in the attached Brief in Support, and also those presented in the County's and Mr. Hunter's Brief in Support of its Motion to Dismiss and/or for Judgment on the Pleadings. (ECF No. 14.)

Concurrence in this Motion was sought on December 2, 2019, by way of providing Plaintiff with a copy of the Motion pursuant to Rule 11's safe harbor provision. To date, Plaintiff has not dismissed his claims or otherwise concurred in the relief sought herein, necessitating the filing of this Motion.

Respectfully submitted,

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC

s/ Matthew J. Zalewski
MATTHEW J. ZALEWSKI (P72207)
27555 Executive Drive, Ste. 250
Farmington Hills, MI 48331
(248) 489-4100
Attorney for Leelanau County
mzalewski@rsjalaw.com

DATED:  January 7, 2020

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

WILLIAM G. WIZINSKY,

   Plaintiff,

vs.                                                              Case No. 19-cv-00894
                                                          Hon. Janet T. Neff
                                                          Magistrate Judge Sally J. Berens

TOWNSHIP OF LEELANAU
and LEELANAU COUNTY,                       *ORAL ARGUMENT REQUESTED*

   Defendants.
_____/

| | |
|---|---|
| WILLIAM G. WIZINSKY<br>Plaintiff in Pro Se<br>250 Pleasant Cove Drive<br>Novi, MI 48377<br>(248) 219-1220<br>wwizinsky@aol.com | ROSATI SCHULTZ JOPPICH<br>& AMTSBUECHLER PC<br>By:  MATTHEW J. ZALEWSKI (P72207)<br>Attorneys for Leelanau County and Paul<br>Hunter, Only<br>27555 Executive Drive, Suite 250<br>Farmington Hills, MI 48331-3550<br>(248) 489-4100/FAX (248) 489-1726<br>mzalewski@rsjalaw.com |

_____/

**BRIEF IN SUPPORT OF**
**DEFENDANT LEELANAU COUNTY'S MOTION FOR SANCTIONS**

**\*\*\*ORAL ARGUMENT REQUESTED\*\*\***

**STATEMENT OF FACTS**

Defendants Leelanau County and Paul Hunter ("Defendants") hereby incorporate by reference and rely upon the Statement of Facts provided in support of their Motion to Dismiss.[1] (ECF No. 14.) This litigation centers on an act of the County by which it issued a Certificate of Occupancy ("C of O") in 2018 for a structure on Plaintiff's property with a condition that the structure not be used as a dwelling.  At the time of the County's decision, the structure had defects including lack of proper toilet, sewage, and water infrastructure, rendering the structure uninhabitable.  In addition, Leelanau Township (the "Township") had denied a land use permit which would be required to occupy the structure.  Though Plaintiff had a right to file administrative appeals of the Township's and County's decisions, he did not.  Likewise, although Plaintiff challenges the tax classification and valuation of his property, he never filed a tax appeal with the local board of review and/or the Michigan Tax Tribunal.

Plaintiff filed a Complaint related to this matter on March 12, 2019. *Wizinsky v. Township of Leelanau et. al.,* W.D. Mich. Case No. 19-cv-00191 ("*Wizinsky(1)*") That Complaint alleges an unconstitutional taking (Count I) and a violation of substantive due process (Count II).  The County filed a Motion to Dismiss and/or for Judgment on the Pleadings on October 30, 2019, and concomitantly served Plaintiff with a proposed Motion for Sanctions under the safe harbor provision of Fed. R. Civ. P. 11. As Plaintiff did not dismiss the Complaint within 21 days, the County subsequently filed its Rule 11 motion.

Plaintiff filed the instant Complaint on October 25, 2019. (ECF No. 1.) The County is again a Defendant, together with County Building Official Paul Hunter and numerous separately-represented individual Defendants associated with Leelanau Township and the HOA.

---

[1] The County's Motion to Dismiss is hereby incorporated by reference pursuant to FRCP 10(c).

The Complaint alleges 15 counts. Counts 1 and 2 are identical to the two counts in *Wizinsky(1)*, and are without factual or legal merit for all of the same reasons as the County has argued in both *Wizinsky(1)* and its Motion to Dismiss this case. Counts 12 and 13 (in part) allege violations of federal criminal statutes, while Counts 5, 6, 7, 8, 9, and 11 assert claims under Michigan criminal statutes. Count 3 asserts breach of contract, alleging a contractual relationship developed at the time that Plaintiff paid for and received a building permit. Count 10 alleges unlawful expenditure of tax dollars, but appears to be solely directed toward the non-County co-Defendants. Count 4 alleges a state law claim of tortious interference with a contract. Count 14 alleges a violation of the Fair Housing Act, and Count 15 is a R.I.C.O. claim.

Many of the Complaint's 750+ paragraphs consist of Plaintiff complaining that he thinks he got a raw deal in a Settlement Agreement in a state nuisance lawsuit entitled *The Shores Homeowners Association and Leelanau Township v. William G. Wizinsky and Ann M. Wizinsky,* Leelanau County Circuit Court Case No. 18-10192-CZ (Ex. 1), which was approved by the Township Board on March 21, 2019 (Ex. 2) – *prior* to Plaintiff serving *Wizinsky(1)* on the County. Plaintiff claims that he felt he had to sign the Settlement Agreement for reasons including, "Plaintiff knows from experience in Detroit, when corrupt government insists you all you land they will always win." (ECF No. 1, ¶ 329, 331.) Among other terms, the Settlement Agreement puts limits on the occupancy of the structure on Plaintiff's property, and provides that the Property must be sold by September 30, 2021, and/or the structure removed from the property. (Ex. 1.) Through this Complaint, Plaintiff appears to ask this Court to take superintending control or exercise some form of appellate jurisdiction over the state court so as to vacate or alter the Settlement Agreement. The County Defendants have never been part of the state action.

On September 4, 2019, the Township and HOA filed a Motion for Entry of Order in the Leelanau County Circuit Court. The motion requested that the Circuit Court enter a pocket judgment mentioned in the Settlement Agreement based on the Wizinskys' alleged breach of the Settlement Agreement. On October 22, 2019, Leelanau County Circuit Court Judge Kevin Elsenheimer entered a Decision and Order Granting the Township and HOA's motion. (Ex. 3, 10-22-19 Leelanau County Court Order.) The Decision and Order concluded that the Wizinskys had breached the Settlement Agreement, and ordered the structure to be removed within ninety days. (Ex. 3, p. 3-4.)

**Plaintiff's E-Mail & Media Campaign Against the County**

After Plaintiff filed *Wizinsky(1)*, the County became aware of an incendiary mass e-mail campaign being waged by Plaintiff. On August 8, 2019 Plaintiff sent an e-mail to a wide range of recipients including numerous County employees. (Ex. 4.) Similar e-mails were sent to recipients including a group of Michigan State University professors, media outlets, and local chambers of commerce. (See Ex. 5.) Plaintiff's communication also indicated that he was also sending materials to the Michigan Senate. (Ex. 4.) The message assails the Township, Shores Homeowners Association ("HOA"), and County, essentially claiming that they are racist and have been discriminating against him since adopting an African American child. (It is important to note that, in 2018, Plaintiff filed a request with the Michigan Department of Civil Rights to investigate the County, Township, and HOA for discrimination, but the Department closed the file due to lack of any credible evidence to support Plaintiff's allegations.) Plaintiff implored readers to "Tell the County/Township Public Officials and the Shores, that you want my property rights restored to as they were prior to the adoption of my daughter." (Ex. 4, p. 3.)

4

On August 10, 2019, Plaintiff forwarded the same message to the County Sheriff with a personal note to him. Plaintiff stated, "my goal is to buy email lists for the entire county." (Ex. 6, p. 3.)

An especially troubling communication was sent by Plaintiff on August 27, 2019. (Ex. 7, 8-27-19 e-mail.) In that mass e-mail, Plaintiff stated that he had hired a public relations firm and planned to send his e-mails to 21,000 people throughout Leelanau, Benzie, and Grand Traverse Counties. He also included some ominous directed toward the County that clearly expressed his desire to harm the County:

> If my property rights are not restored by September 26, 2019, my 61st birthday, by nullification of the settlement agreement and a C.O.O. issued as a home: my next step will be more aggressive and not just hurting the reputation of the community but to property values and the probably to the local economy.
>
> I plan on putting a billboard in Lansing, MI with another email blast to the area. Obviously the message is complicated for I-75, but will be read by pedestrians and cars at lights and such. The goal is to get news coverage.
>
> LEELANAU TOWNSHIP/COUNTY OFFICIAL USING TAX DOLLARS FORCED WHITE COUPLE OFF PROPERTY OF 29 YEARS AFTER THEY ADOPTED AN AFRICAN AMERICAN CHILD. PUBLIC OFFICIALS ACTIONS INSURES [*sic*] THE SHORES REMAINS AN ALL-WHITE COMMUNITY.
>
> LET THE COUNTY KNOW YOUR DISAPPROVAL BY VACATIONING ELSEWHERE, AND BY NOT PURCHASING PRODUCTS PRODUCED IN THE COUNTY.

(Ex. 7, p. 3.)

Plaintiff also foreshadowed an escalation of his campaign, and specifically against County officials as follows:

> Then at the end of October we will move to the Federal Level.
>
> I plan on putting up a billboard in Washington D.C. with an accompanying e-mail blast.

5

> LEELANAU TOWNSHIP/COUNTY LEADERS DOUG SCRIPTS AND CHET JANIK USING TAX DOLLARS FORCED WHITE COUPLE OFF PROPERTY OF 29 YEARS AFTER THEY ADOPTED AN AFRICAN AMERICAN CHILD. PUBLIC OFFICIALS ACTIONS INSURES [*sic*] THE SHORES REMAINS AN ALL-WHITE COMMUNITY.

(Ex. 7, p. 3.)

This message was followed-up the next day with one curiously asserting that "The Federal Court has pretty much ordered the County to issue the Certificate of Occupancy as a home." (Ex. 8, 8-29-19 e-mail.) As this Court is aware, however, this case is only at its beginning stages and the Court has done no such thing. Instead, the last action of the Court had been to adjourn the Rule 16 conference to allow the parties to explore settlement of this matter. The August 29, 2019 e-mail goes on to repeat its unfounded allegations of racism against the County in an especially vile manner:

> So how does a N*****[2] get a permit in Leelanau County. The process is; he has to file a discrimination complaint with the State of Michigan Civil Rights Division and they have to order the County to issue a permit:[3]
>
> \*   \*   \*
>
> How do N***** get a corrected Certificate of Occupancy? A Federal Judge has to order the County to issue it![4]
>
> \*   \*   \*
>
> Finally if the Leelanau County people are hurt economically, socially, or reputation. It is on the Shores and the public officials named. You will be blamed for your horrible behavior against my family! Your re-election and job security will be the least of your problems. I AM NOT GOING AWAY!

(Ex. 8.)

---

[2] Un-redacted text included in the attached exhibit.
[3] The County has never been ordered by the Michigan Civil Rights Division to issue a permit. As noted above, a 2018 request by Plaintiff to investigate the County was closed out for lack of credible evidence.
[4] Neither this Court nor any other Federal Court has ordered the County to issue a Certificate of Occupancy.

6

By September 8, 2019, after the HOA had filed its motion to enforce the Settlement Agreement in the state lawsuit, Plaintiff sent out another e-mail that primarily targeted the Township and HOA, but also encouraged readers to "Email the people below if you do not want your tax dollars wasted on such nonsense and if you believe The Shores should return the money to the Township." (Ex. 9, 9-8-19 e-mail.) The list of e-mail addresses included that of the County Administrator and County Building Official. (Ex. 9, p. 7.)

As evidenced by the attached e-mails, the above excerpts are just a small sampling of the content of Plaintiffs' relentless campaign against the County, Township, and HOA. The exhibits also do not include the many attachments accompany several of these e-mails, which included documents he has presented to the state when seeking investigation of his unfounded allegations of civil rights violations.

**The Complaint Admits that it is Plaintiff's Intention to Harm the County**

Alarmingly, Plaintiff *admits in his Complaint* that he wishes to do harm to the County. He alleges that he "has started a boycott of Leelanau County/Township because of government sponsored and unlawfully funded racism" (ECF No. 1, ¶724), that he "went to Kroger who carries Leelanau County products" (ECF No. 1, ¶725), that he hired an advertising company to send out "21,000" e-mails (ECF No. 1, ¶730), and that he passed out "four hundred brochures" (ECF No. 1, ¶ 736).

Most alarmingly, Plaintiff asserts, "This evidence is to be used to boycott the economy of Leelanau County . . . until resignation of Defendants are exposed and forced to resign to prevent future discrimination." (ECF No. 1, ¶ 739.) Also, "With the billboards, media campaign, mass e-mails, prior to trial Defendants actions have and will affect interstate commerce with Plaintiff's boycott." (ECF No. 1, ¶ 742.) As such, Plaintiff's Complaint could be construed as effectively

7

admitting that this litigation is one tool in a broader attempt to extract political concessions from the County.

**Plaintiff's Request for Concurrence in a "Motion for Summary Disposition"**

On November 27, 2019, Plaintiff sent all Defense counsel an e-mail seeking concurrence in an intended "Motion for Summary Disposition" with respect to his state law claims of embezzlement (Count 9) and violation of the Michigan Constitution (Count 10). Plaintiff indicated that he intends to as this Court to set aside the Settlement Agreement and to take various actions to investigate the Township. The County has declined to concur. In the same e-mail, the County Defendants' counsel requested concurrence in a Motion to Dismiss the entire Complaint, citing grounds including that this Court has no jurisdiction over the state court Settlement Agreement. If Plaintiff files his motion (or any others thereafter), Defendants ask that this motion be construed to include an award that includes all fees and costs incurred in responding to those motions.

**The Motion to Dismiss and Motion for Sanctions**

The County filed its Motion to Dismiss December 2, 2019. (ECF No. 14.) The County simultaneously served this Motion on Plaintiff under the Rule 11 safe harbor provision.

As discussed more thoroughly below and in the County's Motion to Dismiss and/or for Judgment on the Pleadings, Plaintiff lacks standing to raise his takings and substantive due process claims due to failure to obtain a final decision via administrative appeal of the County's decision(s), and/or those claims otherwise fail on the merits for reasons including but not limited to Plaintiff's lack of a protected property right, the County's legitimate interest in enforcing applicable codes, and Plaintiff's inability to show that he has been deprived any lawful use of his property. The balance of Plaintiff's claims fail for reasons including but not limited to failure of

8

claims brought under criminal statutes to state a civil cause of action, insufficient pleading of Fair Housing Act and RICO claims against the County Defendants, and immunity provided by Michigan law.

Given that Plaintiff's Complaint lacks any basis in fact or law, was mooted by the Settlement Agreement before it was even served on the County Defendants, and appears to be part of an ongoing harassment campaign against the County Defendants, the County Defendants respectfully request that this Court impose sanctions against Plaintiff, pursuant to Fed. R. Civ. P. 11, as well as award any other relief the Court deems appropriate.

## ARGUMENT

**I.     This Court should impose sanctions against Plaintiff, pursuant to Federal Rule of Civil Procedure 11(b).**

"Rule 11 imposes on attorneys a duty to reasonably investigate factual allegations and legal contentions before presenting them to the court." *Penn, LLC v Prosper Bus. Dev. Corp.*, 773 F3d 764, 766 (6th Cir 2014). This duty equally applies to *pro se* plaintiffs. See, e.g., *Golyar v. McCausland,* 738 F.Supp 1090, 1098. (W.D. Mich. 1990.)

Specifically, Rule 11(b) provides:

By presenting to the court a pleading ... or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) **it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation**;
>
> (2) **the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law;**

9

>(3) **the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;** and
>
>(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). (emphasis added). "If, after notice and a reasonable opportunity to respond, the Court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. The reviewing court may impose a sanction consisting of "an order directing payment ... of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Civ. P. 11(c)(2).

Rule 11 mandates that a party and his attorney inquire into the viability of a pleading *before it is signed*. The language of the rule emphasizes the responsibility of the signing attorney to investigate the facts and law *before* filing pleadings with the court. Fed. R. Civ. P. 11(b). After that time, both counsel and the party retain a continuing responsibility to review pleadings for their conformity with Rule 11, and to dismiss an action when it becomes evident that they no longer comply with Rule 11. *Herron v. Jupiter Transportation Company,* 858 F.2d 332, 336 (6th Cir. 1988). Failure to do so warrants the imposition of sanctions against the offending party and/or attorney when a reasonable inquiry would have disclosed that the pleading was lacking in factual support or unwarranted by existing law. *Id.* (See, also, *Golyar v. McCausland, supra.*)

The test for imposing Rule 11 sanctions is whether the conduct at issue was objectively reasonable under the circumstances. *Tropf v. Fidelity Nat. Title Ins. Co,* 289 F.3d 929, 939 (6th Cir. 1995); *Albright v. Upjohn Co.*, 788 F.2d 1217, 1221 (6th Cir. 1986). Rule 11 has been amended to reduce the reluctance of courts to impose sanctions for pleading abuses, with the

goal of diminishing the number of frivolous claims filed. Advisory Committee Note, Fed. R. Civ. P. 11. As the 6th Circuit held in *INVST Financial Group, Inc. v Chem-Nuclear Systems, Inc*, 815 F.2d 391, 401 (6th Cir 1987):

> The 1983 amendment to Rule 11 removed much of the district court's discretion in imposing sanctions; **Rule 11 now mandates the imposition of sanctions if the underlying conduct is found to violate the Rule**. The standard by which conduct is judged has become more stringent as well; **a showing of "good faith" will no longer be sufficient to avoid sanctions**.
>
> **The conduct of counsel that is the subject of sanctions will be measured by an objective standard of reasonableness under the circumstances**.

(internal cites omitted) (emphasis added). Likewise, a finding of subjective bad faith is not required to trigger imposition of an award of sanctions. *Rentz v Dynasty Apparel Industries, Inc*, 556 F3d 389, 396 (6th Cir 2009); *Herron v Jupiter Transp Co,* 858 F.2d at 334-335. Furthermore, where a court finds that Rule 11 has been violated, sanctions are mandated. Such sanctions may appropriately include payment of the opposing party's costs and attorney fees.

Here, Plaintiff's Complaint violates Rule 11(b)(2) and (b)(3) because the claims asserted against the County Defendants were clearly without any legal or factual merit at the time the original Complaint was filed, those original claims continue to lack merit as pled in the instant new Complaint, and the newly-introduced allegations are largely not even civil claims or are pled against the County Defendants without any plausible factual basis. In his Complaint, Plaintiff raises a takings claim and a substantive due process claim against the County, arising from the County's issuance of a Certificate of Occupancy in 2018 restricting the use of the structure on his property for a dwelling. As discussed more thoroughly in the County Defendants' Motion to Dismiss and/or for Judgment on the Pleadings, Plaintiff lacks standing to bring these claims because he never timely appealed the County's decision to restrict the C of O to the board of appeals (and the time for doing so has long since passed). *Arnett v. Myers,* 281

11

F.3d 552, 562 (6th Cir. 2002), citing *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 186 (1985); *Seguin v. City of Sterling Heights,* 968 F.2d 584, 588 (6th Cir. 1992). Nor did he appeal an underlying land use permit by the Township to the Township Zoning Board of Appeals.  Moreover, to the extent that he claims that his tax classification and valuation constitute a taking or substantive due process violation, again he did not appeal his valuation to the board of review and/or Michigan Tax Tribunal, which has exclusive jurisdiction over such matters. Mich. Comp. Laws § 205.731.  Further, he lacks a protected property right as is required to raise a due process claim since he has no vested right in an unlawful use. *Silver v. Franklin Township Bd. of Zoning Appeals,* 966 F.2d 1031, 1036 (6th Cir. 1992); *Seguin,* 968 F.2d at 591. And, the takings claim fails on the pleadings because Plaintiff has not lost all use of his property, nor even a portion of any lawfully established existing use since Plaintiff never even sought final inspections to obtain a C of O for the structure as it existed in 1992. *Penn Central Transportation Company v. City of New York,* 438 U.S. 104, 124 (1978).

Counts 5-9 and 11-13 all are brought under state or federal criminal statutes.  Given the amount of research Plaintiff appears to have put in to drafting the Complaint, even he as a *pro se* Plaintiff should have known that criminal statutes do not provide civil causes of action. Moreover, as Plaintiff's past effort to have the state investigate the County for civil rights violations to no avail, that reality combined with the reasons contained in the County Defendants' motion to dismiss should have made it obvious to him that he did not have a cause of action for discrimination against the County Defendants under the Fair Housing Act or 42 U.S.C. § 1982.  Further, Plaintiff's research into RICO claims should have made it clear to him that the requirement for actions to affect interstate commerce cannot be satisfied through his own

12

visits to Kroger to get them to sign on to his personal boycott of products that happen to be made in Leelanau County.

Moreover, it is clear from reading the Complaint that Plaintiff is trying to use this action to collaterally attack and circumvent the state court Settlement Agreement by asserting claims premised on his allegation that his structure should be granted a full C of O. Plaintiff should know that federal courts do not have appellate jurisdiction over the state courts. This Court is precluded from entertaining a claim that arrives in the posture of a collateral attack. *See, e.g., Pratt v. Ventas, Inc.,* 365 F.3d 514, 521-522 (6th Cir. 2004).

Courts in this Circuit have awarded sanctions in similar circumstances. For instance, in *Dutka v. Rosenthal*, No. 96-1134, 1997 WL 225510 (6th Cir. May 1, 1997) (Ex. 10), the Court affirmed an award of sanctions against the plaintiff and his counsel where, as here, the action appeared to have been a "spite type of lawsuit" and plaintiff's attorney based the filed Complaint on legally indefensible positions. Similarly, in *Kallok v. Boardman Local Sch. District Bd. of Educ.*, 24 F.Appx. 496, 498 (6th Cir. 2001) (Ex. 11), the plaintiff's attorney was sanctioned under Rule 11 where he failed to offer an explanation as to why a controlling case should not apply. *Id.* Plaintiff here has similarly failed in this regard and sanctions should be imposed.

Because Plaintiff has failed to dismiss his frivolous and unfounded claims the County Defendants, defense counsel has been forced to spend numerous hours defending against these claims, including the recent filing of a Motion to Dismiss and/or for Judgment on the Pleadings, a response to Plaintiff's Motion to Consolidate *Wizinsky(1)* with this case, and potentially a response to Plaintiff's "Motion for Summary Disposition." The County is entitled to relief for being required to defend this litigation which was brought for the improper purpose of harassing the County (as evidenced by Plaintiffs' relentless ill-willed mass e-mail campaign against the

13

County and the Complaint's own allegations), and which has been perpetuated to "cause unnecessary delay" and to "needlessly increase the cost of litigation. Fed. R. Civ. P. 11(b)(1)&(2).

By filing two Complaints on the same matter, Plaintiff clearly has no intention of ceasing to use this Court as a vehicle for his campaign, and likely intends to only further escalate this matter. Consequently, Rule 11 sanctions are warranted in this matter to deter Plaintiff from continuing to pursue these claims. It should have been clear to Plaintiff and/or his former attorney from the outset of *Wizinsky(1)* were not warranted by existing law or facts. But, even if Plaintiff were to be given the benefit of the doubt in *Wizinsky(1),* that should not extend to his duplication of those same counts and all the additional frivolous claims in *Wizinsky(2)* that come across as an abuse of the judicial system. Consequently, Defendant respectfully requests that this Honorable Court impose sanctions in the form of costs and attorneys fees pursuant to FRCP 11(b), and along with an award of any other relief that the Court determines to be fair, just and equitable.

Defense counsel provided a copy of this Motion for Sanctions to Plaintiff on December 2, 2019 and, as of the date of filing of this Motion, Plaintiff has failed to withdraw his Complaint against the County. Therefore, the County has met its twenty-one (21) day "safe harbor" requirement pursuant to FRCP 11(c)(2).

## **CONCLUSION**

WHEREFORE, Defendants Leelanau County and Paul Hunter respectfully request that this Honorable Court enter an Order granting its Motion for Sanctions and award any other additional relief that the Court finds appropriate.

        Respectfully submitted,
ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC

s/ Matthew J. Zalewski_____
MATTHEW J. ZALEWSKI (P72207)
27555 Executive Drive, Ste. 250
Farmington Hills, MI 48331
(248) 489-4100
Attorney for Defendant Leelanau County
mzalewski@rsjalaw.com

DATED:  January 7, 2020

## CERTIFICATE OF COMPLIANCE WITH L.CIV.R.  7.3

I hereby certify that this Brief was created using Microsoft Word version 1909, and that the Brief contains 4,200 words in the text and footnotes, exclusive of the caption, index, signatures, and this certificate.

        s/Matthew J. Zalewski_____

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2019, I served the foregoing paper upon William Wizinsky, acting in pro se, at the address indicated in the caption by United States Postal Service and by email to wwizinsky@aol.com; and on January 7, 2020 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to plaintiff, acting in Pro Se, and all counsel of record.

        ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC
s/ Matthew J. Zalewski_____
MATTHEW J. ZALEWSKI (P72207)
Attorney for Defendant Leelanau County
mzalewski@rsjalaw.com