UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM G. WIZINSKY,

                Plaintiff,                               Hon. Janet T. Neff

v.                                            Case No. 1:19-cv-894

LEELANAU COUNTY, et al.,

                Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, William Wizinsky, proceeding pro se, filed this action against Defendants: (1) Leelanau County and Paul Hunter (collectively the "County Defendants"); (2) Shores Homeowners Association (HOA) Board Members Todd Hoogland, Norm Golm, Dick Koenig, Peter Wolcott, and Brigid Hart (collectively the "HOA Defendants"); and (3) Leelanau Township officials Steve Patmore, Doug Scrips, Denise Dunn, Deborah Vanpelt, Gary Frederickson, and Gaylen Leighton (collectively the "Township Defendants"). Plaintiff's claims arise out of Defendants' enforcement of building codes and ordinances and refusals to allow Plaintiff to use his structure—a gazebo—as a dwelling, which ultimately resulted in the Township and the HOA suing Plaintiff in state court. Plaintiff invokes federal question jurisdiction by asserting claims pursuant to 42 U.S.C. §§ 1982 and 1983, the Fair Housing Act (FHA), 42 U.S.C. §§ 3601 *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.* Plaintiff also invokes the Court's supplemental jurisdiction, *see* 28 U.S.C. § 1367, by alleging numerous state-law claims, most of which are based on criminal statutes.

This matter is before the Court on the following motions:  (1) the County Defendants' Motion to Dismiss and/or for Judgment on the Pleadings (ECF No. 14); (2) the HOA Defendants and Township Defendants' Joint Motion for Summary Judgment (ECF No. 60); (3) Plaintiff's Motion for Summary Judgment on Counts 9 and 10 (ECF No. 16); (4) Plaintiff's Motion for Injunctive Relief and Stay and for an Order Nullifying Settlement Agreement (ECF No. 19); (5) the County Defendants' Motions for Rule 11 Sanctions (ECF Nos. 44 and 57); and (6) Plaintiff's Motion for Leave To File Previously-Filed Response (ECF No. 66).   The motions are fully briefed and ready for decision.[1]   Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the County Defendants' motion to dismiss and the HOA Defendants and Township Defendants' motion for summary judgment be **GRANTED**; Plaintiff's motions for summary judgment, injunctive relief, and leave to file be **DENIED**; and the County Defendants' motion for sanctions in the instant case be **GRANTED**.

## I.     BACKGROUND

### A.     Facts

#### 1.     Plaintiff Builds a Gazebo

Plaintiff has owned Lot 11 of the Shores Subdivision in Leelanau Township, Leelanau County, Michigan, commonly known as 12063 Foxview Drive, Northport, Michigan 49670 (the "Property"), since October 1, 1990.   The Property is within the HOA.   (ECF No. 1 at PageID.4–5.)   In 1992, Plaintiff sought permission from the HOA, the Township and the County to construct a treehouse/gazebo on the Property.   In his Building Permit application, Plaintiff described the structure as a one-story "Gazebo 12 x 14 + 6 x 8, " and stated that the structure was "non-

---

[1] Defendants have requested oral argument on their motions and responses to Plaintiff's motions. Because the parties' briefs adequately develop the issues, the Court concludes that oral argument is unnecessary.

permanent, no foundation, screened, covered porch [and] detached." (ECF No. 17-20 at PageID.1133.)   On August 10, 1992, the township issued a Land Use Permit for the gazebo, which classified the structure as "non-permanent," with no foundation, plumbing, electrical, or mechanical and no bathrooms or bedrooms. (ECF No. 17-8 at PageID.1123.)   The Land Use Permit did not authorize Plaintiff to use the structure as a dwelling. On August 12, 1992, the County issued a Building Permit for a "gazebo – 12'x 20' x 14'" with a specific use identified as "shed." (ECF No. 14-4 at PageID.764.)   After Plaintiff built the gazebo, which sat off the ground on stilts, the Township classified it as Class D-10, Single-Family Detached, for property tax purposes. (ECF No. 1-2 at PageID.188.)   Plaintiff has never challenged the tax classification of the gazebo.

### 2. Plaintiff's 2015 Expansion and the Discovery of the Nonconforming Structure

In 2015, Plaintiff added a first story to the preexisting structure and a wood stove. Plaintiff did not obtain approval from the HOA for the expansion and did not obtain any permits or approvals from the Township or the County.[2] (ECF No. 1-1 at Page ID.112.)   Around that time, Plaintiff applied for approvals to repair storm damage to the gazebo. (ECF No. 1 at PageID.26.) In connection with the review of Plaintiff's application, the Township and County discovered that the existing structure did not conform to the plans that had been approved in 1992, was not permitted, and did not have a Certificate of Occupancy. (ECF No. 1-1 at PageID.112.)   In addition, it was determined that there had been no final inspection of the original structure, and no Certificate of Occupancy had issued. (ECF No. 14-5.)

---

[2] Plaintiff subsequently obtained approval from the County for the wood stove in July 2018. (ECF No. 1-1 at PageID.140.)

While Plaintiff was seeking permission to repair the damage, Defendant Hoogland, on behalf of the HOA, requested the Benzie-Leelanau District Health Department (BLDHD) to investigate sewer and water issues pertaining to Plaintiff's occupancy of the Property.   On August 13, 2015, William Crawford of the BLDHD sent a letter to Plaintiff notifying him that the BLDHD had no record that sewage disposal and water systems had been approved for the Property, and therefore, the BLDHD did not approve the use of a dwelling (the gazebo) on the Property. Because of these deficiencies, Mr. Crawford instructed Plaintiff to vacate the gazebo and not re-occupy it until approved septic and water supply systems were in place.   (ECF No. 1-1 at PageID.117–18.)   Mr. Crawford further notified Plaintiff that "[t]his required vacation of the dwelling in no way waives your responsibility to comply with any and all local or state requirements that demand your compliance."[3]   (*Id.* at PageID.118.)

An internal County document from August 2015 indicated that Plaintiff would apply for a building permit to complete the original work "with current alterations."   (ECF No. 14-5.)   The County issued a June 22, 2017 Violation Notice, which referenced a meeting of the same date with County and Township zoning and building officials and indicated that Plaintiff would obtain a land use permit from the Township for the re-construction work on the gazebo.   (ECF No. 14-9.) On December 12, 2017, Defendant Patmore, the Township's Zoning Administrator, notified Plaintiff that he could not approve Plaintiff' Land Use Permit Application as submitted.   In his email to Plaintiff, Defendant Patmore reviewed the history of the gazebo, noting that the structure that was built in 1992 was not in compliance with the 1992 Land Use Permit for both the structure

---

[3]  It appears that, as of January 17, 2019, the BLDHD approved Plaintiff's installation of a chemical toilet in the gazebo to satisfy the septic/sewer-related occupancy restriction dating back to 2016. (ECF No. 1-1 at PageID.122–25.)   However, Mr. Crawford nonetheless noted that such approval did not "waive [Plaintiff's] responsibility to meet any association, local, state or federal requirements."   (*Id.* at PageID.125.)

height and rear-setback requirement, but there was no evidence that the Township had ever taken enforcement action regarding these discrepancies.   Defendant Patmore also noted that, in 2015, an addition was constructed onto the older structure (the first floor) without any permits or approval.   He disagreed with Plaintiff's position that the addition was necessary to reinforce the existing structure and noted that the structure was now effectively a two-story structure.   He also stated that Plaintiff had referred to the structure as "a tiny house" and admitted to "residing inside the structure in the past."   (ECF No. 1-1 at PageID.112.)   Defendant Patmore determined that a new permit was not required for the old 1992 portion of the structure that was not built in accordance with the 1992 Land Use Permit and that, after 25 years, the Township should not take enforcement action as to the violations relating to the original structure.   Defendant Patmore found the original structure to be a protected non-conforming structure regarding the setback requirement.   However, Defendant Patmore found that the 2015 addition violated the zoning ordinance because no permit was issued, and because it did not meet the current setback requirements, he could not approve Plaintiff's application unless the Zoning Board of Appeals granted a variance.   (*Id.* at PageID.112.)   Defendant Patmore summarized his conclusions as follows:

> 1.   I can not approve the Land Use Permit Application as submitted.
>
> 2.   The 2015 addition does not conform to the zoning ordinance and must be removed unless a variance or appeal is granted.
>
> 3.   You have the right to request a variance of the setback requirement from the Leelanau Township ZBA.
>
> 4.   You have the right to appeal my determinations to the Leelanau Township ZBA.
>
> 5.   If #2 and/or #3 are not applied for, and the 2015 addition is not removed, I will recommend to the Leelanau Township Board that enforcement action be taken to remove the addition.

6.   The structure may not be used as a dwelling.

(*Id.*)

On January 26, 2018, the County issued a repair Residential Building Permit for the following work:   "Residential utility structure, Gazebo/shed, 12 x 20, structurally support original structure after storm."   (ECF No. 14-11; *see also* ECF No. 1 at PageID.31.)   In late December 2017 or early January 2018, Plaintiff had filed a complaint with the Michigan Department of Civil Rights (MDCR), claiming that the Township discriminated against Plaintiff, who is White, because his adopted daughter was African-American, by denying him a permit and the ability to repair his home.   (ECF No. 1 at PageID.30–31; ECF No. 26-2 at PageID.1790.)   The MDCR dismissed Plaintiff's complaint on April 30, 2018, due to "insufficient evidence to proceed."   (*Id.* at PageID.1792.)   Plaintiff alleges that the MDCR investigator told him that she "found significant circumstantial evidence of racism, but not enough for prosecution," and that the MDCR required the County to issue the repair Building Permit in settlement of Plaintiff's discrimination complaint. (ECF No. 1 at PageID.30–31.)   However, Amy MacDonald, the MDCR employee who investigated Plaintiff's complaint, states that although she had "thorough conversations with [Plaintiff] explaining to him the meaning of direct evidence and circumstantial evidence," she never told Plaintiff that she found significant circumstantial evidence of racism but instead informed him that there was no direct or circumstantial evidence that the Township engaged in discrimination.   (ECF No. 26-2 at PageID.1869–70.)

On July 11, 2018, at the end of the time for completing the work under the repair Building Permit, the County issued Plaintiff a Certificate of Occupancy for the gazebo.   The Certificate of Occupancy specified the following "Special stipulations and conditions:   Structure may not be used as a dwelling per Leelanau Township Zoning Administrator Correspondence dated Dec 12,

2017 and Benzie Leelanau Health Department Certified Letter dated Aug. 13, 2015."   (ECF No. 1-1 at PageID.115.)

### 3.   The HOA and the Township Sue Plaintiff in State Court

On or about October 5, 2018, the HOA and the Township, through their respective counsel, filed a complaint against Plaintiff and his wife in the Leelanau County Circuit Court, captioned *The Shores Home Owners Association and Leelanau Township v. William G. Wizinsky and Ann M. Wizinsky*, No. 18-10192-CZ.   The complaint alleged four claims:   (1) nuisance per se; (2) enforcement of restrictive covenants—injunction to abate violations; (3) recovery of costs and damages for enforcement of restrictions; and (4) libel.   (ECF No. 26-2 at PageID.1766–88.)   The case was assigned to Hon. Kevin A. Elsenheimer.   The Township was a party only as to Count I, the nuisance per se claim.   On March 14, 2019, the parties, represented by counsel, entered into a Settlement Agreement, pursuant to which Plaintiff and his wife agreed to list the Property for sale within 30 days and the HOA and the Township agreed not to pursue any enforcement action for existing violations of the HOA's rules or Township ordinances.   (ECF No. 17-9 at PageID.1056.) Plaintiff was required to include removal of the gazebo as a condition of any sale.   The Settlement Agreement provided that, if the Property was not sold by October 30, 2021, a "pocket judgment" providing for removal of the gazebo by October 30, 2021, would be entered, but if Plaintiff breached the Settlement Agreement at any time, the HOA and the Township could enter the pocket judgment.   Plaintiff also agreed to "withdraw and dismiss any investigation into alleged discrimination by [the HOA and the Township]" and not to "file any new claims or seek any new investigations for anything occurring prior to the date of this settlement."   (*Id.* at PageID.1057.) Finally, the parties agreed to sign a mutual release and to dismiss the case with prejudice.   Judge

Elsenheimer entered a stipulated order of dismissal on June 4, 2019, in which he maintained jurisdiction to enforce the terms of the Settlement Agreement.   (ECF No. 61-3.)

On September 4, 2019, the HOA and the Township filed a Motion for Entry of Order, seeking entry of the pocket judgment due to Plaintiff's breach of the Settlement Agreement, including his failure to sign a mutual release.   (ECF No. 26-2 at PageID.1804–08.)   On October 22, 2019, Judge Elsenheimer issued a Decision and Order granting the HOA and Township's motion and ordering Plaintiff and his wife to remove the gazebo and any other non-natural objects from the Property within 90 days.   (ECF No. 26-2 at PageID.1810–13.)   On December 5, 2019, Judge Elsenheimer issued an order granting the HOA and Township's Motion to Enforce the Settlement Agreement, which ordered that the mutual release attached to the order is effective and deemed executed by all parties.   (ECF No. 50-1 at PageID.2642–46.)

On December 9, 2019, Plaintiff and his wife filed an objection to the order enforcing the Settlement Agreement and a motion for injunctive relief based on the HOA and the Township's alleged violation of Article 9, Section 18 of the Michigan Constitution (the basis for Plaintiff's Count 10 in the instant case) and to set aside the Settlement Agreement based on fraud in the inducement or duress.   On March 19, 2020, Judge Elsenheimer entered a Decision and Order denying both motions.   Regarding Plaintiff's motion to set aside the Settlement Agreement, Judge Elsenheimer stated:

> In this case, the Settlement Agreement and pocket judgment were reached after mediation facilitated by Attorney Todd Millar and negotiation by the parties.   All parties, including the Defendants, were properly represented by legal counsel and willingly agreed to the settlement terms.   Defendants have failed to demonstrate both the required elements for fraudulent inducement and duress.   Nor have the Defendants asserted, much less demonstrated, mutual mistake or severe stress preventing them from understanding the terms of the Settlement Agreement. Absent a showing of fraud, duress, mutual mistake or severe stress, the Court is bound…to enforce the Settlement Agreement/Pocket Judgment negotiated by the parties on March 14, 2019. . . .

(ECF No. 50-1 at PageID.2639–40.)   On April 1, 2020, Plaintiff filed a notice of appeal to the Michigan Court of Appeals.   (ECF No. 50-1 at PageID.2649.)

### B.   Procedural History

On March 12, 2019—two days before the parties executed the Settlement Agreement in the state-court case—Plaintiff, through counsel, filed a two-count complaint in this Court against the Township and the County.   *Wizinsky v. Township of Leelanau, et al.*, No. 1:19-cv-191 (*Wizinsky* I).   In Count I, Plaintiff alleged a takings claim pursuant to 42 U.S.C. § 1983.   In Count II, Plaintiff alleged a substantive due process claim pursuant to 42 U.S.C. § 1983.   On April 17, 2019, Plaintiff voluntarily dismissed the Township in accordance with the Settlement Agreement. On September 9, 2019, the Court granted Plaintiff's counsel's motion to withdraw.   (*Wizinsky* I, ECF No. 23.)   Thereafter, the County filed a motion to dismiss.   Plaintiff, having filed the instant case on October 25, 2019—three days after Judge Elsenheimer issued his order directing Plaintiff and his wife to remove the gazebo within 90 days—then moved to consolidate the two cases. (*Wizinsky* I, ECF No. 34.)   On December 12, 2019, this Court issued a Report and Recommendation recommending that the Court dismiss *Wizinsky* I and allow the instant case to proceed, as Plaintiff had indicated that the claims in both cases were based on the same set of circumstances.   (ECF No. 43.)   On May 12, 2020, Judge Neff issued an Opinion and Order adopting the December 12, 2019 Report and Recommendation and directed the Clerk to dismiss Case No. *Wizinsky* I as duplicative of the instant case.

## II.      DISCUSSION

### A.      The HOA and Township Defendants' Motion for Summary Judgment

#### 1.      Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   Material facts are facts that are defined by substantive law and are necessary to apply the law.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute is genuine if a reasonable jury could return judgment for the non-moving party.   *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."   *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

#### 2.      Release of Claims

The HOA and Township Defendants contend that all of Plaintiff's claims in this case are barred by the Mutual Release effectuated by the Settlement Agreement.[4]   A release is valid under Michigan law "if it is fairly and knowingly made."   *Green v. BP Prod. of N. Am., Inc.*, 169 F. App'x 951, 957 (6th Cir. 2006) (citing *Brooks v. Holmes*, 163 Mich. App. 143, 145 (1987)).

---

[4] The HOA and Township Defendants also argue that Plaintiff's claims are barred by the doctrine of res judicata.   As the Sixth Circuit has recently observed, however, it remains unclear whether the Michigan Supreme Court would extend the "transactional" test it applies to determine whether res judicata applies "to cases in which the parties have switched sides in the second suit." *Etherton v. Serv. First Logistics, Inc.* 807 F. App'x 469, 471 (6th Cir. 2020) (noting that Michigan lower courts have reached different conclusions as to whether the transactional approach should be extended to claims that could have been raised as counterclaims in the prior action).   It is possible that Plaintiff raised some of his claims in this case as defenses in the state-court litigation, but the HOA and Township Defendants have not presented any evidence or argument Plaintiff in fact raised his claims in this case as defenses.   On the other hand, to the extent Plaintiff raises arguments in this case that are defenses to, or attack or undermine the validity of, the Settlement Agreement and the state-court's orders, res judicata would apply to bar such arguments.

Where the language of a release is unambiguous and unequivocal, "the scope of a release is governed by the intent of the parties as it is expressed in the release." *Gramer v. Gramer*, 207 Mich. App. 123, 125 (1994). "If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release." *Cole v. Ladbroke Racing Mich., Inc.*, 241 Mich. App. 1, 13 (2000). Extrinsic evidence may not be used to interpret unambiguous language in a release. *Shay v. Aldrich*, 487 Mich. 648, 667 (2010). A release is ambiguous only if its language is reasonably susceptible to more than one interpretation. *Cole*, 241 Mich. App. At 13.

> The parties' Mutual Release provides, in pertinent part:
>
> The Shores Home Owners Association, the Township of Leelanau, William G. Wizinsky, and Ann M. Wizinsky (collectively referred to as the "Parties"), for the sole consideration of the mutual promises and benefits as set forth in the Settlement Agreement dated March 14, 2019, between the Parties . . . , releases [sic] and discharges [sic], and, by execution of this full and final release, does [sic] forever release and discharge each other, their employees, principals, agents, insurers, successors and assigns, for and from any and all liability, claims, demands, controversies, damages, actions and causes of actions for . . . loss and damage of any kind and nature sustained by or hereafter resulting to the undersigned, from incidents which occurred arising out of the claims and allegations as set forth in the Shores Home Owners Association and Township of Leelanau's Complaint and First Amended Complaint and William G. Wizinsky and Ann M. Wizinsky's affirmative defenses as set for [sic] in the lawsuit pending in Leelanau County Circuit Court, Michigan, Case No. 18-10192-CZ . . . .

(ECF No. 50-1.) Although the Mutual Release is not a model of grammatical correctness or draftsmanship, its language is not ambiguous. The Mutual Release, which by its terms applies to the individual HOA and Township Defendants, makes clear that the parties intended to release all claims relating to Plaintiff's use of the gazebo as a dwelling. As mentioned above, the claims in the state-court case arose out of Plaintiff's use of the gazebo (including the expansion) as a dwelling in violation of the Township's zoning ordinance and the HOA's restrictive covenants. The Mutual Release thus bars Plaintiff's claims to the extent they are based on the HOA and

Township Defendants' refusal to allow Plaintiff to use the gazebo as a dwelling or their acts that prevented him from doing so.   The Mutual Release thus bars all of Plaintiff's claims, except, arguably, Plaintiff's Count 10, which alleges that the Township Defendants unlawfully spent funds on the state-court litigation in violation of the Michigan Constitution, and his RICO claim in Count 15, which alleges that Defendants violated RICO by forcing him to sign the Settlement Agreement under extreme duress.   These claims, as explained below, are subject to dismissal on other grounds.   Finally, Plaintiff's FHA claim is barred not only by the Mutual Release, but also by the Settlement Agreement which, like the Mutual Release, must be enforced according to its plain terms if unambiguous.   *Hydrofiltros, de Mexico, S.A. de C.V. v. Rexair, Inc.*, 355 F.3d 927, 930 (6th Cir. 2004).   Specifically, Plaintiff agreed "not to file new claims" regarding alleged discrimination by the HOA and the Township in precluding Plaintiff from using the gazebo as a dwelling.   (ECF No. 17-9 at PageID.1057.)   Plaintiff's FHA claim is improper as to the HOA and the Township.

Plaintiff argues that the state-court action was legally invalid because the HOA and the Township had no basis to file suit.   He further argues that the Settlement Agreement should be set aside because it was obtained by fraudulent inducement and Plaintiff signed it under duress.   (ECF No. 67 at PageID.3784–87.)   However, Judge Elsenheimer already considered and rejected these arguments in denying Plaintiff's motion to set aside the Settlement Agreement, concluding that Plaintiff failed to show the required elements of fraudulent inducement or duress.   As Judge Elsenheimer noted, the parties, including Plaintiff, were represented by counsel and entered into the Settlement Agreement and pocket judgment following mediation.   Plaintiff cites no authority for this Court to hear issues that were already decided against Plaintiff in state court.   *See Payne v. Jennings*, No. 98-6296, 1999 WL 801585, at *1 (6th Cir. Sept. 27, 1999) ("A plaintiff may not

relitigate issues in a federal court § 1983 action that were previously decided in a state court proceeding.") (citing *Donovan v. Thames*, 105 F.3d 291, 293 (6th Cir. 1997)).   In short, Plaintiff offers no persuasive reason for this Court to revisit the state-court's rulings.[5]

**B.   County Defendants' Motion to Dismiss**

1.   **Motion Standards[6]**

The County Defendants move for dismissal pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim.   A motion under Rule 12(b)(1) may be brought as either a facial attack or a factual attack.   *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

> A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading.   When reviewing a facial attack a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss.   If those allegations establish federal claims, jurisdiction exists.

*Id.* (citations omitted).   On the other hand, when a motion presents matters outside the pleadings in an attack on jurisdiction, the district court may make factual findings to resolve the dispute. *Lovely v. United States*, 570 F.3d 778, 781–82 (6th Cir. 2009); *see also Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005) ("When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the burden of

---

[5] The HOA and Township Defendants also argue that the Court should dismiss this case for lack of subject matter jurisdiction, but they fail to sufficiently develop their argument.   As the Court explained in its May 1, 2020 Order, Plaintiff's Section 1983, FHA and RICO claims fall within the Court's jurisdiction under 28 U.S.C. § 1331.   (ECF No. 49 at PageID.2626 n.1.)

[6] Although the County Defendants bring their motion as both a motion to dismiss and a motion for judgment on the pleadings, the motion is properly treated as a motion to dismiss because they have not yet filed an answer.   *See Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 628 (W.D. Mich. 2015) (noting that a Rule 12(b)(6) motion "must be made before pleading," while a Rule 12(c) motion is made "after the pleadings are closed"—after the defendant files an answer).

proving that the court has jurisdiction over the subject matter.").   Because the County Defendants present matters outside the record, their motion constitutes a factual attack.

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating its assertions in a light most favorable to Plaintiff to determine whether it states a valid claim for relief.   *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).   As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).   This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Id.*   If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"   *Id.*   As the Court further observed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.* at 678-79.

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any attached exhibits, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided they are referenced in the complaint and central to the claims therein.   *See Bassett v. Nat'l Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008).

14

2.      **Collateral Attack Doctrine**

The County Defendants argue that the Court should dismiss this action as an improper collateral attack on the state-court's orders and the Settlement Agreement.   The Sixth Circuit has described a "collateral attack" as "a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court."   *Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004) (citing *Pratt v. Ventas, Inc.*, 273 B.R. 108, 116 (W.D. Ky. 2002)); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) ("We have made clear that it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.") (internal quotation marks and brackets omitted).

> The judicial system's need for order and finality requires that orders of courts having jurisdiction to enter them be obeyed until reversed, even if proper grounds exist to challenge them. A challenge for error may be directed to the ordering court or a higher court, as rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction. These principles are firm and long standing.

*Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255 (4th Cir. 1997) (citing *Celotex*, 514 U.S. at 305–07).   "'[E]ven though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment.'"   *Harbinger Capital Partners LLC v. Ergen*, 103 F. Supp. 3d 1251, 1265 (D. Colo. 2015) (quoting *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972)).

The collateral attack doctrine could not have applied in *Wizinsky I* because Plaintiff filed his complaint in that case just days before the parties entered into the Settlement Agreement and before Judge Elsenheimer entered the dismissal order and his post-judgment enforcement orders. However, Plaintiff filed his complaint in the instant case three days after Judge Elsenheimer entered his order directing Plaintiff and his wife to remove the gazebo from the Property within 90

days.   For example, in Count 2, his substantive due process claim, Plaintiff added an allegation referring to the "fraudulent lawsuit" filed by the HOA and the Township, which forced Plaintiff to sign a "settlement agreement under duress."   (ECF No. 1 at PageID.42.)   Similarly, in his RICO claim, Plaintiff alleges that he was "forced to sign a settlement agreement under extreme duress where he was forced to sell his property and remove his house from the property to a new property against his will."   (*Id.* at PageID.98.)   Moreover, since filing his complaint in this case, Plaintiff has further demonstrated his intention to use this proceeding to attack the Settlement Agreement and the state-court action itself by filing a motion for injunctive relief to stay the removal of the gazebo and to nullify the Settlement Agreement based on fraud in the inducement and duress. (ECF No. 19.)   Because Judge Elsenheimer retained jurisdiction over the Settlement Agreement, Plaintiff's attempt to use this Court to undermine the state-court action is improper.

Accordingly, this action is subject to dismissal as an improper collateral attack.

### 3.       Count 1 – Takings Claim

In Count 1, Plaintiff alleges a claim against Defendant Hunter for taking the Property without paying just compensation, in violation of the Fifth and Fourteenth Amendments.   In particular, Plaintiff alleges that Defendant Hunter took the Property by refusing to allow Plaintiff to use the gazebo as a dwelling.   (ECF No. 1 at PageID.41.)   The County Defendants offer several grounds for dismissal.

### a.   Defendant Hunter

The County Defendants argue that Defendant Hunter should be dismissed because Plaintiff's claims against him are official capacity claims that are, in fact, claims against the County.   *See Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) ("Where the entity is named as a defendant, an official-capacity claim is redundant.").   Plaintiff responds that he has not named the County in Counts 1 or 2 (substantive due process claim) and has named Defendant

Hunter, individually, for committing a felony when he signed the Certificate of Occupancy.   (ECF No. 33 at PageID.2071–72.)   Even so, dismissal is still required because "[a] takings claim cannot be asserted against an individual defendant."   *Jamison v. Angelo*, No. 4:10CV2843, 2012 WL 4434152, at *7 (N.D. Ohio Sept. 24, 2012); *see also Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984) ("Plaintiff cites no case, and we can find none, that suggests that an individual may commit, and be liable in damages for, a 'taking' under the fifth amendment").

### b.  Standing, Ripeness and Mootness

The County Defendants also argue that the Court lacks jurisdiction over Plaintiff's takings claim for several reasons.   First, they argue that Plaintiff lacks Article III standing because he cannot show a causal link between their conduct and the alleged injury.   Second, they argue that Plaintiff's claim is unripe because Plaintiff failed to pursue a final decision from the County regarding the Certificate of Occupancy and a final decision from the Township regarding its denial of a Land Use Permit through available administrative appeals.   Finally, they argue that the Settlement Agreement has rendered Plaintiff's takings claim moot.

Standing is "the threshold question in every federal case."   *Warth v. Seldin*, 422 U.S. 490, 498 (1975).   To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be "fairly traceable" to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury.   *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).   Standing is determined at the time the complaint is filed.   *Sullivan v. Benningfield*, 920 F.3d 401, 407 (6th Cir. 2019) (quoting *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001)).

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *National Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)); *see also Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997) ("Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review.").   In the takings context, until recently, the law imposed two requirements before a plaintiff could pursue a takings claim in federal court.   First, "the government entity charged with implementing the regulations [must have] reached a final decision regarding the application of the regulations to the property at issue."   *Crosby v. Pickaway Cty. Gen. Health Dist.*, 303 F. App'x 251, 259 (6th Cir. 2008) (quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985)).   Second, the plaintiff must pursue state procedures for seeking just compensation.   *Id.* (citing *Williamson Cty.*, 473 U.S. at 194).   In *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), the Court eliminated the second requirement, allowing a plaintiff to file a claim in federal court without having to first pursue a state-court just compensation case.   However, the finality requirement remains intact.   *Id.* at 2169.

Finally, a case becomes moot if it is no longer live before the court decides it.   *Burke v. Barnes*, 479 U.S. 361, 363 (1987).   "[I]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed."   *Ailor v. City of Maynardville*, 368 F.3d 587, 596 (6th Cir. 2004) (internal citations omitted).   Because mootness implicates a federal court's jurisdiction under Article III's "case or

controversy" requirement, courts lack judicial power to entertain and decide moot cases.   *See Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979).

The Court need not address standing and ripeness because Plaintiff's own actions have rendered his takings claim moot.   By entering into the Settlement Agreement, Plaintiff contractually limited his rights in the Property by bargaining for limited usage as a dwelling in exchange for foregoing any other relief that might expand or increase his right to use the gazebo as a dwelling.   Because the time for removal of the gazebo has been accelerated and may have already occurred, its occupancy status and whether Plaintiff is entitled to an unrestricted Certificate of Occupancy are moot issues.   Moreover, by entering into the Settlement Agreement, Plaintiff effectively deprived the County of the opportunity to exercise its judgment in an appeal about whether to expand the Certificate of Occupancy.   Relatedly, because the Township can no longer be asked or required to review its denial of the Land Use Permit—the reason for the County's issuance of a limited Certificate of Occupancy—Plaintiff has essentially tied the County's hands as to the scope of the Certificate of Occupancy.[7]

### 4.    Count 2 – Substantive Due Process Claim

The County Defendants argue that Plaintiff's substantive due process claim must be dismissed because Plaintiff lacks a protected property interest in the use of the gazebo as a dwelling

---

[7] This point is also germane to the standing analysis.   Although the County issued the Certificate of Occupancy, it was bound to recognize the Township's denial of a Land Use Permit for Plaintiff to use the gazebo as a dwelling.   In that regard, Plaintiff's standing to assert a claim against the County is dubious, at best, as it was the Township's decision that caused the alleged harm.   *Cf. Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 498 (6th Cir. 2001) ("The defendant in this suit is the Charter Township of Ypsilanti.   Anderson does not claim that the Township was in any way at fault for the state trial court's delay, nor does he argue that the Township could remedy the alleged violation.   The Township, then, is not the proper defendant against whom this claim may be asserted.").   Furthermore, although Plaintiff may have resolved the sewage disposal and water system issues with the BLDHD at the time the County issued the Certificate of Occupancy, Plaintiff does not allege that he notified the County of this fact.

and because the County's alleged actions do not shock the conscience.   However, dismissal is required for a more basic reason.

Plaintiff alleges in this claim that his right to substantive due process was violated in two ways:   (1) Defendants lacked a rational basis to tax the gazebo as a single-family home but deny Plaintiff the use of the gazebo as a dwelling; and (2) the HOA and the Township denied Plaintiff due process by filing the "fraudulent lawsuit."   (ECF No. 1 at PageID.42.)   The County Defendants were not involved in either of these acts.   The County was not a party to the state-court action.   In addition, under Michigan's General Property Tax Act, the Township, not the County, is the taxing jurisdiction responsible for administering the property tax.   Mich. Comp. Laws § 211.27; *see also Gale v. Charter Twp. of Filer Bd. of Trs.*, 142 F. Supp. 3d 549, 551–52 (W.D. Mich. 2015) (veterans sued the township for failing to grant them a property tax exemption under the Dannie Lee Barnes Disabled Veteran Property Tax Relief Act); (*see* ECF No. 1-1 at PageID.104 (Leelanau Township Property Valuation Report)).   Accordingly, Plaintiff's substantive due process claim fails against the County Defendants.

### 5.   Counts 12 through 14

In Count 12, Plaintiff alleges that the County Defendants are liable for abuse of office under 25 C.F.R. § 11.448.   This regulation pertains to a person acting or purporting to in an official capacity for an Indian tribe.   *See Boquist v. Oregon State Senate*, 432 F. Supp. 3d 1221, 1230 (D. Or. 2020) ("This Code applies to members of Native American tribes that the Federal Government recognizes as eligible for Bureau of Indian Affairs services 'and any other individual who is an "Indian" for the purposes of 18 U.S.C. § 1152–1153.'").   As the County is not an Indian tribe this regulation is not applicable in this case.

In Count 13, Plaintiff alleges that the County Defendants violated 18 U.S.C. §§ 241 and 242 and 42 U.S.C. § 1982.   Plaintiff's claim based on 18 U.S.C. §§ 241 and 242 fails because

both are criminal statutes that provide no private right of action.   *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994)); *see also Weathers v. Holland Police Dep't*, No. 1:13-CV-1349, 2015 WL 357058, at *2 (W.D. Mich. Jan. 27, 2015) (stating that the "[p]laintiff's attempt to sue defendants for monetary damages under [Sections 241 and 242] is frivolous").

Plaintiff's claim pursuant to 42 U.S.C. § 1982 also fails.   Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof, to inherit, purchase, lease, sell, hold, and convey real and personal property."   Section 1982 provides an avenue for asserting housing discrimination claims, apart from the FHA.   *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).   The Sixth Circuit has observed that the statute "is limited to claims of discrimination involving conveyances of real and personal property."   *Al-Marayati v. Univ. of Toledo*, No. 97-3161, 1998 WL 252760, at *2 (6th Cir. 1998); *see also City of Memphis v. Greene*, 451 U.S. 100, 121 (1981) (stating that Section 1982 "encompass[es] every racially motivated refusal to sell or rent") (quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 421–22 (1968)).   Plaintiff does not allege that the County Defendants did anything to interfere with his conveyance of an interest in the Property.   The County's only act concerning the Property was its issuance of a limited Certificate of Occupancy for the gazebo. Even if the statute applied, Plaintiff still fails to state a claim.   To state a claim, a plaintiff must plead facts showing racial animus.   *Moniz v. Cox*, 512 F. App'x 495, 501 (6th Cir. 2013). Plaintiff offers nothing more than conclusory statements that the County Defendants acted with racial animus in issuing the limited Certificate of Occupancy.   Plaintiff simply lumps the County Defendants in with the HOA and Township and alleges that they used the state-court lawsuit and the Settlement Agreement to force Plaintiff to sell the Property because of his adopted daughter's

race.   (ECF No. 1 at PageID.88–92.)   Plaintiff fails to allege any fact to show that the County

Defendants acted with racial animus.   *See Solomon Realty Co. v. Tim Donut U.S. Ltd., Inc.*, No.

2:08-CV-561, 2009 WL 5183405, at *3 (S.D. Ohio Dec. 21, 2009) (holding that the Supreme

Court's broad interpretation of Section 242 did not require the court to accept the plaintiff's

"conclusory allegations").   For these reasons, Plaintiff's FHA claim set forth in Count 14 (again

alleging "fraudulent litigation" in which "Plaintiff and his wife signed their property rights away

out of extreme duress!") also fails to state a claim against the County Defendants.

### 6.    Count 15 – RICO Claim

Plaintiff's final claim is a RICO claim that is insufficiently pled.   Apart from that

shortcoming, it is simply an effort to collaterally attack the state-court action.   For his injury,

Plaintiff alleges that he "was forced to sign a settlement agreement under extreme duress where he

was forced to sell his property and remove his house from the property to a new property against

his will."   (ECF No. 1 at PageID.98.)   The claim fails for other reasons.   First, the Sixth Circuit

has held that "[c]ounties are not persons under RICO because they lack 'the capability to form the

mens rea requisite to the commission of the predicate acts."   *Call v. Watts*, No. 97-5406, 1998

WL 165131, at *2 (6th Cir. Apr. 2, 1998) (quoting *Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp.

502, 504 (W.D. Ky. 1990)).   Second, Plaintiff wholly fails to allege the existence of an enterprise.

*See VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000).   Third,

Plaintiff's only factual allegation against Defendant Hunter mentions him in connection with the

Settlement Agreement, but there is no evidence or allegation that he was a party to that agreement

or had anything to do with the litigation.   Finally, Plaintiff fails to allege a "pattern of racketeering

activity because he alleges "only a single scheme targeting a single victim" over a limited time

frame.   *See Bachi-Reffitt v. Reffitt*, 802 F. App'x 913, 918 (6th Cir. 2020) (holding that husband's

allege scheme to conceal the true value of his interest in a company during a divorce proceeding was not indicative of long-term criminal conduct).

### 7.    State-Law Claims

Having recommended the dismissal of all of Plaintiff's federal claims, I recommend that his state-law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).   "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."   *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996).   In deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."   *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).   Applying these considerations, the balance weighs against exercising supplemental jurisdiction, particularly because at least one of Plaintiff's claims presents an issue under the Michigan Constitution, which is best left to a state court to decide.

### C.    Plaintiff's Motions

Plaintiff has filed a motion for summary judgment on Counts 9 and 10 of his complaint, which allege embezzlement, in violation of a Michigan criminal statute, and improper use of public funds, in violation of Article 9, Section 18 of the Michigan Constitution.   Given the foregoing recommendation to dismiss the state-law claims without prejudice, I recommend that this motion be denied without prejudice.

Plaintiff's second motion is titled "Motion for Injunctive Relief for a Stay for the Protection of Plaintiff's Home and Motion to Nullify Contract Based on Fraud in the Inducement, Duress and Fraud in the Settlement Agreement."   As the title suggests, Plaintiff requests that his Court find the Settlement Agreement invalid and step in to prevent the removal of the gazebo.   As discussed above, Judge Elsenheimer has already determined that the Settlement Agreement is valid and was

not the product of fraudulent inducement or duress.   There is no basis for this Court to review those findings or to interfere with the state court's jurisdiction over the Settlement Agreement. As for Plaintiff's request for injunctive relief, the Anti-Injunction Act provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.   The Act "creates an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions.'" *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004) (quoting *Atlantic Coast Line R.R. Co. v. Bhd. Of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)).   The exceptions are: "(1) where Congress expressly authorizes, (2) where necessary in aid of the court's jurisdiction, and (3) where necessary to protect or effectuate the court's judgments."   *Id.* (citing 28 U.S.C. § 2283).   None of these limited exceptions apply in this case.   In addition, the Act applies even though the relief Plaintiff requests is aimed at Defendants and not the state court.   "It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding."   *Atlantic Coast Line*, 398 U.S. at 287. Thus, the relief Plaintiff requests falls within the Act's prohibition.   *See Pelfresne v. Vill. of Williams Bay*, 865 F.2d 877, 880 (7th Cir. 1989) ("Based on the foregoing it would appear that Pelfresne's suit falls squarely within the prohibition of section 2283.   Although the suit is nominally directed at the victors in a concluded state-court action, it is clear that the effect of injunctive relief in this case would be to completely nullify the results of the prior state proceeding.").

Plaintiff has also filed a motion for leave to file additional exhibits to a previously filed response.   (ECF No. 66.)   Having reviewed the record, the Court notes that Plaintiff did file a response to the County Defendants' motion to dismiss.   (ECF Nos. 32 and 33.)   Plaintiff filed a

brief with fifteen exhibits attached.   (ECF No. 33.)   The additional exhibits Plaintiff offers would not affect the recommendations set forth herein.   Accordingly, this motion should be denied.

### D.    County Defendants' Motions for Sanctions

The County Defendants have filed two motions for sanctions against Plaintiff pursuant to Federal Rule of Civil Procedure 11.   The County filed the first motion in *Wizinsky* I, which was preserved and transferred to the docket in this case by the May 12, 2020 Order dismissing *Wizinsky* I as duplicative of this case.   (*Wizinsky* I, ECF No. 48.)   The County Defendants filed the second motion after Plaintiff filed the instant case.   The County Defendants contend that, by continuing *Wizinsky* I after he entered the Settlement Agreement with the HOA and the Township and after the County's motion to dismiss in that case made clear that Plaintiff had no viable claim, or at least no ripe claim, Plaintiff violated Rule 11 by continuing to pursue a groundless lawsuit.   Similarly, the County Defendants argue that Plaintiff violated Rule 11 by filing the instant case, not only because the Settlement Agreement mooted Plaintiff's takings-related claims, but also because Plaintiff sought to use this federal court to nullify the state court's previous orders.   In addition, the County Defendants argue Plaintiff used this litigation to further his unfounded and widespread campaign accusing the County of racism against Plaintiff and his daughter.   (ECF No. 44 at PageID.2473–76.)   Finally, the County Defendants point out Plaintiff's admissions in his complaint regarding his intent to harm the County as part of the public boycott he has started and argue that, given these admissions, his use of the litigation is nothing more than a tool to extract political concessions from the County.   (ECF No. 2476–77.)

Pursuant to Rule 11, an attorney or an unrepresented party who files a pleading or other paper with a court certifies that, among other things:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)– (3).   Upon finding that Rule 11 has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."   Fed. R. Civ. P. 11(c)(1).   The determination of an appropriate sanction is a matter committed to the discretion of the district court.   *See Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 376 (6th Cir. 1996).   The range of sanctions includes

nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4).   However, the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.*

In the Sixth Circuit, the test for determining whether a party has violated Rule 11 is whether the individual's conduct was reasonable under the circumstances.   *See Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997).   The standard is an objective one.   *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989); *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) (noting that "the imposition of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct' " (quoting *United States v. Kouri–Perez*, 187 F.3d 1, 8 (1st Cir. 1999)).   "Thus, [a party's] good faith is not a defense." *Id.*   The party's conduct is to be judged at the time the pleading or paper was signed rather than from hindsight.   *See INVST Fin. Grp., Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987).

Given the history of the dispute in this case, including the state-court case between the HOA and the Township, I conclude that Rule 11 sanctions are not warranted for *Wizinsky* I. Plaintiff filed that complaint, which asserted only the takings and substantive due process claims relating to Plaintiff's use of the Property, through counsel prior to the parties' execution of the Settlement Agreement and prior to Judge Elsenheimer's order directing Plaintiff and his wife to remove the gazebo from the Property.   Although the County subsequently asserted valid reasons to dismiss the claims, the I cannot say that Plaintiff's complaint was objectively unreasonable at the time of filing.   I am also cognizant of the Sixth Circuit's admonition that district courts "should be hesitant to determine that a party's complaint is in violation of Rule 11(b) when the suit is dismissed pursuant to Rule 12(b)(6) and there is nothing before the court, save the bare allegations of the complaint." *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003).   The *Tahfs* court reasoned that "[a]t the pleading stage in the litigation, ordinarily there is little or no evidence before the court at all, and such facts as are alleged, must be interpreted in favor of the nonmovant." *Id.*

On the other hand, Plaintiff's pro se complaint in the instant case presents a different situation.   At the time Plaintiff filed his complaint, the parties had entered into the Settlement Agreement, and Judge Elsenheimer had ordered Plaintiff to remove the gazebo.   Plaintiff did not hide his intention to use this action and this Court to override Judge Elsenheimer's administration of the state-court action.   Moreover, Plaintiff's complaint in this action was different in nature than his complaint in *Wizinsky* I.   Here, Plaintiff made what appear to be false allegations about the MDCR investigator's findings regarding his discrimination complaint, and he asserted (again, apparently) baseless claims of racism and discrimination by not only the County, but also the HOA and the Township, in violation of the Settlement Agreement.   (ECF No. 17-9, PageID.1057.)   In addition, Plaintiff added several groundless claims, including a RICO claim, that falsely alleged

27

that the County was somehow involved with the state-court case.   The Sixth Circuit has observed that, even on a Rule 12(b)(6) motion to dismiss, Rule 11 sanctions may be warranted for the assertion a groundless RICO claim:

> A civil RICO claim is an unusually potent weapon—the litigation equivalent of a thermonuclear device.   For this reason, there is a strong temptation for plaintiffs to raise a RICO claim, even when the claim is obviously frivolous.   To deter such conduct, courts have not hesitated to impose Rule 11 sanctions as a sanction for bringing frivolous RICO claims.   A sanction under Rule 11 is appropriate where a RICO claim is filed even though no reasonable and competent attorney would believe the claim has merit.

*Bachi-Reffitt*, 802 F. App'x at 919 (quoting *Martinez v. Martinez*, 207 F. Supp. 2d 1303, 1308 (D.N.M. 2002), *aff'd in part, vacated in part*, 62 F. App'x 309 (10th Cir. 2003) (quotation marks and citations omitted)).   For these reasons, I conclude that Plaintiff's complaint, as well as his other filings in this case, violated Rule 11(b)(1)–(3).

Plaintiff argues that the Court must reject the County Defendants' motion because, as a pro se Plaintiff, the Court must liberally construe his complaint.   Plaintiff further argues that the Court must construe his complaint in a light most favorable to Plaintiff.   (ECF No. 47 at PgeID.2615–16.)   But these are pleading standards that do not govern Rule 11 motions.   "Pro se plaintiffs are not exempt from Rule 11 sanctions simply because they are not represented by counsel."   *Dietrich v. City of Gross Pointe Park*, No. 16-11049, 2017 WL 5709592, at *6 (E.D. Mich. Jan. 12, 2017); *see also Johnson v. Belvedere Gardens Condominiums Ass'n, Inc.*, No. 12-2118, 2013 WL 4056356, at *10 (W.D. Tenn. Aug. 12, 2013) ("Sanctions may be imposed on a represented plaintiff if at the time the sanctionable paper was filed, the plaintiff was a *pro se* litigant.").   Accordingly, Plaintiff offers no valid justification to excuse his Rule 11 violations.

Therefore, I recommend that the Court find that Plaintiff has violated Rule 11.   However, because of Plaintiff's pro se status and because I am recommending that Plaintiff's case be dismissed in its entirety, I also recommend that, in the exercise of its discretion, *see Rentz v.*

*Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 398 (6th Cir. 2009), the Court not award monetary sanctions.

### III.    CONCLUSION

For the foregoing reasons, I recommend the Court:  (1) **grant** the County Defendants' motion to dismiss (ECF No. 14) and the HOA and Township Defendants' joint motion for summary judgment (ECF No. 60) and dismiss Plaintiff's state law claims **without prejudice** pursuant to 28 U.S.C. § 1367(c)(3); (2) **deny** Plaintiff's motion for summary judgment on Counts 9 and 10 (ECF No. 16), motion for injunctive relief (ECF No. 19), and motion for leave to file (ECF No. 66); and (3) **deny** the County Defendants' *Wizinsky* I motion for Rule 11 sanctions (ECF No. 57) but **grant** the County Defendants' motion for Rule 11 sanctions in the instant case (ECF No. 44).   I further recommend that, if the Court accepts the recommendations regarding the Rule 11 motion and dismissal of the case, it not award monetary sanctions.

### <u>NOTICE</u>

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: August 20, 2020                                       /s/ Sally J. Berens
                                                            SALLY J. BERENS
                                                            U.S. Magistrate Judge